UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Melvin L. Allen,

      Petitioner,

v.

Minnesota Department of Corrections,

      Respondent.

File No. 13-cv-62 (DSD/TNL)

**REPORT
&
RECOMMENDATION**

---

Melvin L. Allen, 232046, MCF-Faribault, 1101 Linden Lane, Faribault, MN 55021 (*pro se* Petitioner); and

Linda Kay Jenny, **Hennepin County Attorney's Office**, 300 South Sixth Street, Suite C-2000, Minneapolis, MN 55487, and Matthew Frank and Jennifer R. Coates, **Minnesota Attorney General's Office**, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101 (for Respondent).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Petitioner Melvin L. Allen's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1). This matter has been referred to the Court for report and recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that Petitioner's request for habeas relief be denied.

**I.    BACKGROUND**

The facts of this case have been previously set forth as follows:

On July 31, 2009, appellant Melvin Louis Allen was charged with three counts of first-degree criminal sexual conduct. The complaint alleged that appellant had sexually abused his then nine-year old daughter, M.A., in

1

July 2009. At that time, appellant lived in Minneapolis with his wife, Victoria Brown, and their four children. During that time, Brown's sister, LaTonya Turner and her three daughters were living with appellant and Brown. Appellant also has a 17–year old daughter from a previous relationship, T.A.

In mid-July, Turner and Brown had an altercation and Brown threw Turner out of the house. According to Turner, after they moved out, Turner's daughter, N.S., told her that something had happened concerning M.A. N.S. testified that M.A. told her that appellant "was just touching on her private parts." Turner asked T.A. to speak with M.A. about these allegations.
T.A. testified that she asked M.A. if appellant had touched her inappropriately. M.A. said yes. T.A. took M.A. to their neighbor A.P.'s house after their conversation. A.P. testified that she also spoke with M.A. that day and that M.A. told her that "[appellant] made her put his stuff in her mouth" and that "he put his thing between her booty and he put his finger up her vagina."

The next morning, Turner picked up M.A. from A.P.'s house and took her to a park in St. Paul. M.A. told Turner that appellant had been touching her inappropriately. Turner stayed with M.A. for a few hours, and eventually M.A. decided that she wanted to tell police. M.A. told police that "my daddy been touching on me" and then began crying. Police arranged to have M.A. go to Midwest Children's Resource Center (MCRC), where she talked to Beth Carter, an MCRC nurse. M.A.'s interview with Carter was videotaped and played for the jury at trial. During this interview, M.A. discussed the sexual abuse.

Carter also conducted a physical exam of M.A. Carter testified that she did not observe any physical evidence of sexual or physical assault, but that the lack of physical findings was actually consistent with what M.A. described had happened. Carter testified that she did not expect to see any physical findings during the exam.

M.A. testified at trial that appellant touched her "butt," her "privacy part" and her mouth with "[h]is privacy part" on more than one occasion. M.A. further testified that appellant put his "privacy" in her mouth on another occasion in his room. The state elicited testimony that appellant had also sexually assaulted M.A. while they lived in Chicago and that the first time appellant assaulted M.A., she was six years old.

Sergeant Charles Green of the Minneapolis Police Department testified that he was assigned the case involving appellant and M.A. Sergeant Green

> testified that he did not attempt to obtain any physical evidence from appellant's home because the sexual abuse occurred nearly a week before he received M.A.'s report of abuse. Sergeant Green analyzed the sexual-assault kit provided from the hospital and testified that there was no physical evidence demonstrating the occurrence of a sexual assault.
>
> Ralph Faville, M.D., reviewed M.A.'s physical-examination report and testified for appellant. Dr. Faville stated that the results of the physical exam did not include the "sorts of trauma that [he] would expect to find" in a sexual-assault victim. Appellant also introduced a videotape of a Cornerhouse interview of M.A.'s then five-year-old sister, A.A. During the interview, A.A. implies that appellant sexually abused her. But then, A.A. tells the interviewer that appellant did not touch her and that her "auntie lied." When asked further, A.A. stated that "[m]y mommy didn't do nothing" and "Daddy didn't do nothing." She then stated that "[my auntie] said daddy touched me ... [r]ight here and right here."
>
> The jury found appellant guilty of all three counts of criminal sexual conduct. Following the verdict, appellant moved for a new trial, judgment of acquittal, and a mistrial due to prosecutorial misconduct. Appellant asserted, among other errors, on the ground that the state improperly withheld A.A.'s videotaped interview. The district court denied appellant's motions, reasoning that the videotape was "not necessarily *Brady* material" and that appellant was not prejudiced by the "tardy disclosure" of the videotape. The district court sentenced appellant to 144 months in prison.

*State v. Allen*, No. A10-1117, 2011 WL 2623026, at *1-2, (Minn. Ct. App. July 5, 2011) (alterations in original), review denied (Sept. 20, 2011). After the Minnesota Supreme Court denied review, final judgment was entered on September 26, 2011. (*See* Appendix at 130, ECF No. 13.) Petitioner then filed the instant action seeking habeas relief on three grounds: (1) he was denied and deprived of due process and a fair trial due to the testimony of Nurse Carter; (2) a discovery violation resulted in the non-disclosure of exculpatory evidence; and (3) the evidence was insufficient to support the verdict.

3

## II. DISCUSSION

### A. Time Bar Set by 28 U.S.C. § 2244

At the outset, Defendant argues that because the application was not received until after the one-year period, this petition must be dismissed. A prisoner seeking habeas relief must file a petition within one year of "the date on which the judgment became final by the conclusion of direct review . . . ." 28 U.S.C. § 2244(d)(1)(A). In the present case, final judgment by the state court was issued on September 26, 2011. Petitioner then had ninety days to file a petition for a writ of certiorari with the United States Supreme Court. *See* U.S. Sup. Ct. R. 13. "When the state court of last resort enters a judgment in a direct criminal appeal and the petitioner does not seek a writ of certiorari, the judgment is final at the conclusion of the ninety days allowed by the Supreme Court for the filing of such a writ." *Boston v. Weber*, 525 F.3d 622, 624 (8th Cir. 2008). Thus, for purposes of seeking federal habeas relief, judgment in Petitioner's criminal case became final on December 25, 2011. The one-year period of limitations would therefore have expired on December 24, 2012. Petitioner's application, however, was not received by the Court until January 7, 2013. (*See* Petition, ECF No. 1.)

That the petition was received late was not lost on this Court, as it issued an Order on this very issue. (*See* Order to Show Cause, ECF No. 6.) In response to this Order, Petitioner filed an affidavit averring that he did indeed place the application in the prison mail system on December 17, 2012. (Affidavit of Petitioner at ¶ 2, ECF No. 7.) To be afforded the benefits of the prison mailbox rule, prisoners must "deposit their papers with prison authorities by pertinent due dates . . . ." *Grady v. United States*, 269 F.3d 913, 918

4

(8th Cir. 2001). Then, a prisoner must "file an affidavit or notarized statement recounting the precise date upon which he left his [papers] with prison authorities." *Porchia v. Norris*, 251 F.3d 1196. 1198 (8th Cir. 2001).

Defendant does not put forth any evidence challenging the veracity of Petitioner's affidavit, nor does this Court have reason to doubt Petitioner's veracity on this issue. There was no lengthy delay in filing the affidavit. *See Grady*, 269 F.3d at 918 ("[A] district court may refuse to consider a prisoner's . . . affidavit due to a lengthy and unwarranted delay in submission.") Without any evidence demonstrating otherwise, this Court will consider Petitioner's petition timely and proceed to consider the petition on its merits.

### B. Standard of Review

A state prisoner may receive habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas relief will only be granted if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has since clarified the difference between a state court decision that is "contrary" to federal law and one that is an "unreasonable application" of the law. A state court decision is contrary to federal law if the court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "A state court decision may be incorrect, yet still not unreasonable, and we will grant relief only if the state court decision is both incorrect *and* unreasonable." *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010) (citing *McGehee v. Norris*, 588 F.3d 1185, 1193 (8th Cir. 2009)).

Factual determinations made by state courts are presumed to be correct. *Id.*; 28 U.S.C. § 2254(e)(1). This presumption applies to the factual determinations of both state trial courts and state appellate courts, *King v. Bowersox*, 291 F.3d 539, 549 (8th Cir. 2002), and can only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### C. Testimony of Nurse Carter

Petitioner first argues that Nurse Carter's partial answers to three questions denied and deprived him of his right to due process and a fair trial. During Petitioner's trial, Nurse Carter attempted to answer three different questions by stating that 95% of sexual assault cases involving children do not result in physical findings. *Allen*, 2011 WL 2623026 at *5. Each time she attempted to assert this, Nurse Carter was interrupted by an objection, the objection was sustained, and the jury was told to disregard her partial

statements. *Id.* Petitioner contends that these interrupted statements by the witness violated his rights to due process and a fair trial.

Questions regarding the admissibility of evidence are generally not cognizable in habeas actions as they are matters of state law. *Wood v. Lockhart*, 809 F.2d 457, 459 (8th Cir. 1989); *DelVecchio v. Wengler*, Civil No. 08-2220 (JNE/JSM), 2011 WL 3035110, at *9 (D. Minn. June 14, 2011), *adopted by* 2011 WL 3025698 (D. Minn. July 25, 2011). To be a violation of due process, the evidentiary ruling must be so "gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process." *Wood*, 809 F.2d at 460 (citations and quotations removed).

In denying Petitioner's motion for a mistrial, the district court determined that there was no reason to believe the prosecutor deliberately elicited the attempted answers by Nurse Carter. *Allen*, 2011 WL 2623026 at *5. Moreover, the district court instructed the jury not to consider these interrupted statements during its deliberations. *Id*. The Minnesota Court of Appeals noted that this type of evidence was not prohibited by the district court, it merely requires that counsel lay a proper foundation for it. *Id*. The court further stated that Nurse Carter never *actually* testified to that opinion because every answer in this vein was interrupted by an objection. *Id*.

This decision by the Minnesota Court of Appeals is neither contrary to clearly established federal law nor unreasonable. The "decision that the jury decided the case based on th[e] properly-admitted evidence, instead of the . . . blurt[] by [the witness], is certainly reasonable." *Thomas v. Gibson*, 218 F.3d 1213, 1226 (10th Cir. 2000). These

7

partial statements were not so prejudicial as to infect the trial with fundamental unfairness. *See, e.g.*, *United States v. Sherman*, 440 F.3d 982, 987 (8th Cir. 2006) ("The exposure of a jury to improper testimony ordinarily is cured by measures . . . such as an instruction to the jury to disregard the testimony . . . ."). Petitioner is not entitled to habeas relief on this ground.

      **D.**      **Discovery Violation**

Petitioner next alleges that relief must be granted based on the late disclosure of A.A.'s Cornerhouse interview in which she states that "auntie lied." Although this interview was not provided to Petitioner until mid-trial, a police report summarizing the interview was provided during the discovery period. *Allen*, 2011 WL 2623026, at *3. This summary included A.A.'s statement that "auntie lied." *Id.*

The state court determined that the video interview was not material that fell within the purview of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* at *2. On review, however, the Minnesota Court of Appeals examined the issue within the context of *Brady*. *Id*. The court held that "[t]o constitute a *Brady* violation, '[f]irst, the evidence at issue must be favorable to the accused, either because it is exculpatory or it is impeaching. Second, the evidence must have been suppressed by the state, either willfully or inadvertently. Third, prejudice to the accused must have resulted.'" *Id.* (quoting *Pederson v. State*, 692 N.W.2d 452, 459 (Minn. 2005)). This legal standard is identical to that dictated by the United States Supreme Court for review of potential *Brady* violations in *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, the Court of Appeals "identifie[d] the correct governing legal principle from [the Supreme] Court's

decisions." *Williams*, 529 U.S. at 413. Accordingly, for Petitioner to be entitled to habeas relief, the Court of Appeals must have then "unreasonably applie[d] that principle to the facts" of his case. *Williams*, 529 U.S. at 413. This Court determines that it did not.

The Minnesota Court of Appeals found that because the interview suggests that A.A. was told to lie about the allegations against Petitioner, it could properly be considered impeaching evidence for the purposes of *Brady*. *Allen*, 2011 WL 2623026 at *3. The court, however, also held that Petitioner could not meet the second prong of the test. Citing federal authorities, the court reasoned that because Petitioner received a summary of the interview, which included the impeaching aspects of it, the evidence had not been suppressed. *Id.* This finding was supported by the determination that "federal courts have recognized that *Brady* 'does not require the prosecution to disclose information in a specific form or manner.'" *Id.* (quoting *United States v. Wooten*, 377 F.3d 1134, 1142 (10th Cir. 2004)). It has also been recognized in the Eighth Circuit that there can "be no suppression by the state of evidence already known by and available to [a party] prior to trial." *DeBerry v. Wolff*, 513 F.2d 1336, 1340 (8th Cir. 1975). Because Petitioner received a summary of the interview of A.A., including the relevant impeaching aspects of it, this Court cannot find that the state court's holding was unreasonable or contrary to clearly established federal law.

The state court's finding that Petitioner was not prejudiced also was not unreasonable. Petitioner argued that he was prejudiced in two respects by the late disclosure: (1) proper disclosure would have allowed him to craft his opening statement and witness examinations more effectively; and (2) he would have had time to argue for

9

partial admissibility of the tape so the jury wouldn't hear A.A.'s statements regarding possible abuse by Petitioner. *Allen*, 2011 WL 2623026 at *3-4. The Minnesota Court of Appeals found these arguments unpersuasive.

With respect to Petitioner's first argument, the court acknowledged that Petitioner had a summary of the information contained in the interview. *Id.* at *3. It was unmoved by the argument that the opening statement and examinations could have been otherwise altered had the video been given to Petitioner. *Id.* The Court of Appeals also noted that Petitioner "did not request additional time" in which to view the videotape, "was able to introduce the videotape, re-call certain witnesses to inquire about the videotape's contents, and use A.A.'s statements from the videotape in closing arguments." *Id.* at *4.

The court found Petitioner's second argument similarly unpersuasive. At trial, the court, the prosecutor, and Petitioner all agreed that if only part of the video was shown, Minn. R. Evid. 106[1] would have allowed the state to introduce the rest of the video to the jury. *Id.* Because of this, the court stated that if Petitioner moved for partial admission, it would grant a motion by the state to show the remainder of the video. *Id.* Taking all these factors into account, the Court of Appeals concluded that the late disclosure of the videotape did not prejudice Petitioner. *Id.*

After careful review, the Court determines that these holdings by the state court are not unreasonable. Petitioner does not demonstrate how these findings constitute an

---

[1] Minn. R. Evid. 106 reads: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

unreasonable application of federal law. Because the Minnesota Court of Appeals did not unreasonably apply the standard set forth by the United States Supreme Court for the examination of *Brady* violations, Petitioner is not entitled to habeas relief on this ground.

### E.     Sufficiency of the Evidence

Petitioner also argues that the evidence presented was insufficient to support conviction. Petitioner's claim is based on the following contentions: (1) the evidence was based solely on the complainant's allegation; (2) there were neither witnesses nor physical evidence of abuse; (3) Petitioner had an alibi for the date of the abuse as others were at the house that day; (4) the allegation was led by Petitioner's sister-in-law who had recently been removed from the house; and (5) A.A. said in her interview that Petitioner never touched her and her "auntie lied."

When the sufficiency of the evidence is challenged, courts are not called on to ask whether they believe the evidence established guilt beyond a reasonable doubt, but rather, whether any rational trier of fact could believe the evidence. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The critical inquiry is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318. If, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the verdict must remain undisturbed. *Id.* at 319 (emphasis in original).

As the Minnesota Court of Appeals noted, "[t]he thrust of appellant's argument is not that the state failed to prove an essential element of his criminal-sexual-conduct offenses, but that the lack of eyewitnesses and physical evidence casts doubt on the

11

veracity of M.A.'s testimony." *Allen*, 2011 WL 2623026 at *6. The court went to state that

> [a]ppellant argues that the lack of witnesses to the claimed abuse and the lack of physical evidence support his argument that the evidence is insufficient to support the verdict. But the state introduced testimony from Carter that the lack of physical signs of abuse was expected due to the nature of the abuse and the lapse of time between the abuse and the examination. Further, appellant claims that he has an alibi for the evening of the alleged abuse. He argues that individuals were also at the home that evening and the abuse "could not have happened when [M.A.] said it did." But the fact that other individuals were at the home at the time of the assault does not negate M.A.'s testimony. Appellant did not introduce any evidence demonstrating an actual alibi for the entire evening; he simply introduced evidence that others were in the home on the date of the assault. And finally, appellant relies on A.A.'s statement that her "auntie lied." While this evidence was certainly damaging to the state's case, it is the role of the jury to weigh the credibility of Turner and M.A. in light of this revelation, and the conviction demonstrates that the jury found M.A.'s testimony to be credible.

*Id.* The court declined to reweigh the testimony of A.A. and affirmed the verdict. *Id*. at *7. Because this holding by the Minnesota Court of Appeals is neither contrary to nor an unreasonable application of federal law, Petitioner is not entitled to habeas relief on this ground.

### III.    RECOMMENDATION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1) be **DENIED**; and

2. This matter be **DISMISSED WITH PREJUDICE**.


Date: December 12, 2013           s/ Tony N. Leung
                                  Tony N. Leung
                                  United States Magistrate Judge
                                  District of Minnesota

                                  *Allen v. Minn. Dep't of Corr.*
                                  File No. 13-cv-62 (DSD/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. The Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before December 27, 2013.